NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIETTE CAMPBELL, | Civ. No. 11-6210 |
| Plaintiff, | |
| v. | **OPINION** |
| COUNTY OF MONMOUTH, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

On May 11, 2015 this Court conducted oral arguments on the parties' trial briefs relating to Plaintiff Juliette Campbell's Fair Labor Standards Act ("FLSA") claims. (Doc. Nos. 60, 61, 66). Thereafter, the Court notified the parties that the trial brief of Defendants County of Monmouth, Vincent Petrosini, and Pauline Legg-Weston (collectively "Defendants") would be construed as a Motion for Summary Judgment on the FLSA claims and granted the parties an opportunity to submit supplemental briefs. (Doc. No. 67). After considering the parties' submissions and oral arguments, the Court will grant summary judgment to Defendants on both of Plaintiff's FLSA claims.

BACKGROUND

Plaintiff is a Registered Nurse who worked for the County of Monmouth at the John L. Montgomery Care Center from June 1998 until May 17, 2011. She worked the 11:00 p.m. to 7:15 a.m. shift two to three days per week, earning an hourly wage of $33.61. Her shift included a 45 minute unpaid lunch break. Plaintiff claims that numerous times she was forced to work through her lunch break without being paid. She submitted memos to the Director of Nursing, Defendant Petrosini, and to the Unit Manager of the Young Adult Unit, Defendant Legg-Weston,

1

asking to be paid for the lunches she worked. In July 2010 Petrosini allegedly directed Plaintiff not to send him any more requests; thus, Plaintiff instead sent her memos to Legg-Weston. It appears that for some time, Defendants paid her after receiving these requests. On July 13, 2010 Care Center management sent Plaintiff a memo that she apparently interpreted as an indication she would no longer be paid for her lunchtime work. Thereafter, Plaintiff asserts that from December 2010 to May 2011 Defendants stopped paying for the lunches she claimed to have worked. Plaintiff further alleges that beginning in early 2011 Petrosini began acting hostilely towards her when she refused to stop seeking lunchtime payment.

On May 13, 2011, Plaintiff supervised a Certified Nurse's Aide ("the CNA") while the CNA attended to a paraplegic resident, E.P., who was known to be a difficult patient. Apparently E.P. frequently complained about her treatment; thus, Care Center personnel were instructed to have at least two staff members present when caring for her. On the morning of May 13, 2011, a verbal altercation occurred between E.P. and the CNA regarding the CNA's handling of E.P. Ultimately, as captured on an audio recording, the CNA swore at E.P. in Plaintiff's presence. E.P. filed a complaint and requested an investigation, alleging, among other things, that Plaintiff failed to react appropriately to the CNA's unprofessional conduct. It appears that after reviewing the tape, Defendants determined that suspension was warranted. On June 10, 2011 the Care Center served Plaintiff with a Preliminary Notice of Disciplinary Action, informing her of the specific violations she was charged with and that she was suspended as of May 17, 2011. On October 28, 2011 a disciplinary hearing was conducted to determine whether Plaintiff would be terminated. The hearing officer issued a written decision sustaining all charges and the penalty of removal. Thereafter, a Final Notice of Disciplinary Action was issued, terminating Plaintiff's employment as of May 17, 2011.

Plaintiff asserts that she was fired for requesting her lunchtime pay and that Defendants' proffered explanation for its decision—Plaintiff's mishandling of the E.P. situation—is mere pretext. On October 20, 2011 Plaintiff filed her Complaint, alleging (1) unpaid wages in violation of the FLSA, (2) unlawful retaliation in violation of the FLSA, and (3) a violation of New Jersey's Conscientious Employee Protection Act ("CEPA"). In preparation for trial, the Court held an in-person status conference on April 13, 2015 and requested trial briefs on Plaintiff's FLSA claims. On May 6, 2015, after the parties submitted their trial briefs, the Court held oral arguments, and then informed the parties that Defendants' brief would be construed as a Motion for Summary Judgment on the FLSA claims. The parties were then granted an additional opportunity to submit any further supplemental materials for the motion.

## DISCUSSION

A. Legal Standard

Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "affect[s] the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir. 1983). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

B. Analysis

    i.    *Lunchtime wages*

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). It is undisputed that Plaintiff never worked overtime and that she never fell below the minimum wage, even accounting for Plaintiff's allegedly unpaid lunchtime work. Thus, Plaintiff's claim appears to be for "gap time," that is, uncompensated non-overtime hours worked where the wage averaged across all hours worked remains above minimum wage. The Third Circuit has explicitly ruled that gap time claims are not cognizable under the FLSA. *See Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014). Therefore, judgment will be granted to Defendants on this claim.

    ii.    *Retaliation*

The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . related to [the Act]. 29 U.S.C. § 215(a)(3). A "complaint" is "filed" when the employee makes a written or oral statement that is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute." *Kasten v. St. Gobain Performance Plastics*, 131 S. Ct. 1325, 1335 (2011). The framework for analyzing unlawful retaliation under the FLSA is the familiar *McDonnell-*

4

*Douglas* burden-shifting framework. *See Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002). Thus, to assert a claim for retaliatory discharge under the FLSA a plaintiff must show: (1) the plaintiff engaged in a FLSA protected activity; (2) the employer undertook an adverse employment action against the plaintiff; and (3) a causal link exists between the protected activity and the adverse action. *Zielinksi v. City of Wildwood*, No. 12-7195 JS, 2014 WL 6991388, at *4 (D.N.J. Dec. 10, 2014).

Plaintiff claims that she was terminated in retaliation for repeatedly requesting lunchtime pay. Defendants argue that Plaintiff's requests to be paid did not constitute "protected activity" within the FLSA because they were insufficient to put a reasonable employer on notice of a FLSA violation. Plaintiff's written requests were generally bare, taking the following form: "On [date] my lunch was not taken due to the lack of staff relief. Please forward to payroll for compensation." (Doc. No. 70, Ex. A, B). In response, Plaintiff points to a single instance on July 13, 2010 in which she asked to be paid for her lunchtime work and explicitly stated "I believe that's a basic labor law." (Doc. No. 69, Ex. 1).

At this point, Plaintiff has not identified sufficient evidence in the record to create a genuine dispute of material fact on the issue of protected activity. Given the content and circumstances of Plaintiff's requests to be paid, these requests could not reasonably be understood by an employer to be an assertion of rights under the FLSA. First, even accounting for Plaintiff's uncompensated lunchtime work, at all times she never worked overtime and her pay remained above minimum wage. Second, except for the July 13, 2010 memo, Plaintiff never referenced the FLSA, minimum wage, or any illegality when she asked to be paid and Defendants had stopped paying her. And Plaintiff's July 13, 2010 memo, despite referencing "labor law," was made during the period in which Defendants continued to pay for Plaintiff's

5

lunchtime work—it was not until December 2010 that Plaintiff alleges Defendants stopped paying. Thus, no reasonable juror could find that Plaintiff's requests to be paid would reasonably be understood by an employer to be an assertion of FLSA rights. Plaintiff has not identified evidence to create a genuine dispute of material fact as to whether Plaintiff engaged in protected activity within the FLSA. Accordingly, summary judgment will be granted to Defendants on Plaintiff's FLSA retaliation claim.

      *iii.*    *Subject matter jurisdiction*

Subject matter jurisdiction in this matter is based on federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleged claims under the FLSA. However, these claims have been resolved as discussed above, leaving only Plaintiff's CEPA claim, over which the Court may retain supplemental jurisdiction under 28 U.S.C. § 1367. The exercise of supplemental jurisdiction lies within the district court's discretion; however, if the claims over which the district court had original jurisdiction are dismissed before trial, then "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Here, three and a half years have elapsed since the case was filed in federal court. Discovery has been completed, and a trial date had been set for June 1, 2015. At this point, dismissing the case for Plaintiff to re-file her remaining CEPA claim in state court would contravene the interests of judicial economy, convenience, and fairness. *See Lopresti v. Cnty. of Lehigh*, 572 F. App'x 133, 135 (3d Cir. 2014) (affirming the district court's exercise of supplemental jurisdiction where discovery was complete and dispositive motions had been filed); *Conchewski v. Camden Cnty.*, No. 11-2781 (NLH), 2014 WL 1153779, at *5 (D.N.J. Mar. 21, 2014) (retaining supplemental jurisdiction where discovery

had concluded); *Farneski v. Cnty. of Hunterdon*, 916 F. Supp. 2d 573, 588 n. 18 (D.N.J. 2013) (same).  Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's CEPA claim.  However, the dismissal of Plaintiff's FLSA claims calls into question the remaining CEPA claim.  The parties are thus directed to submit simultaneous briefs for summary judgment on that claim.

## CONCLUSION

For the reasons above, the Court will grant Defendants' Motion for Summary Judgment on both of Plaintiff's FLSA claims.  Furthermore, the parties will be directed to submit simultaneous motions for summary judgment by June 23, 2015 regarding Plaintiff's remaining CEPA claim.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.