NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIETTE CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MONMOUTH, et al.,<br><br>Defendants. | Civ. No. 11-6210<br><br>**OPINION** |

THOMPSON, U.S.D.J.

This matter appears before the Court upon the June 23, 2015 Motion for Summary Judgment by Defendants County of Monmouth, Vincent Petrosini, and Pauline Legg-Weston (collectively "Defendants"). (ECF No. 75.) Plaintiff Juliette Campbell opposes. (ECF No. 77.) After considering the parties' written submissions and after having heard oral argument, the Court will grant summary judgment to Defendants on Plaintiff's Conscientious Employee Protection Act ("CEPA") claim.

BACKGROUND

Given the extensive procedural history of this case, Court will recount only those facts relevant to the present Motion. Plaintiff was a part-time Head Nurse who worked for the County of Monmouth at the John L. Montgomery Care Center from June 1996 until her termination on May 17, 2011. Her shift at the Care Center included a 45 minute unpaid lunch break. Plaintiff claims that due to lack of staff relief she was forced to work through her lunch break numerous times from March 2010 to May 2011. Plaintiff submitted memos to her supervisors, Defendants Petrosini and Legg-Weston, seeking compensation for the lunches she worked. It is undisputed that until December 2010, Defendants paid her after receiving these requests. However, Plaintiff

1

claims that from the end of December 2010 onward, Defendants stopped paying for the lunches she worked. Plaintiff further alleges that in early 2011, Petrosini began acting hostilely towards her when she refused to stop seeking lunchtime pay.

On May 13, 2011, Plaintiff supervised a Certified Nurse's Aide ("the CNA") who was attending to paraplegic resident E.P. E.P. was known to be a difficult patient who frequently complained about her treatment. A verbal altercation occurred in Plaintiff's presence between the CNA and E.P. regarding the CNA's allegedly improper handling of E.P.'s legs. As captured on an audio recording, the CNA raised her voice at, spoke in a hostile manner toward, and ultimately swore at E.P. After the incident, E.P. wrote a letter complaining about Plaintiff's failure to intervene and respond appropriately to the CNA's unprofessional conduct. Defendants reviewed the recording, interviewed E.P., and ultimately determined that Plaintiff's suspension was warranted. On May 18, 2011, a Notice of Immediate Suspension was prepared. On June 10, 2011, the Care Center issued a Preliminary Notice of Disciplinary Action informing Plaintiff of the specific violations she was charged with and suspending her as of May 17, 2011. On October 28, 2011, a disciplinary hearing was conducted to determine whether Plaintiff would be terminated. At the hearing, Plaintiff did not mention any failure by Defendants to pay her for lunchtime work. The hearing officer issued a written decision on November 7, 2011 sustaining all charges and the penalty of removal. Thereafter, a Final Notice of Disciplinary Action was issued, terminating Plaintiff's employment as of May 17, 2011.

Plaintiff asserts that she was unlawfully terminated in retaliation for seeking lunchtime pay and that Defendants' proffered explanation for their decision—Plaintiff's mishandling of the E.P. situation—is mere pretext. On October 20, 2011, Plaintiff filed a Complaint alleging Fair Labor Standards Act ("FLSA") violations and unlawful retaliation in violation of CEPA. On

2

June 9, 2015 this Court granted Defendants' Motion for Summary Judgment on the FLSA claims and ordered the parties to submit motions for summary judgment on the remaining CEPA claim. Defendants' present Motion for Summary Judgment followed.[1] The Court heard oral argument from the parties on September 22, 2015.

## DISCUSSION

A. Legal Standard

Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id*. Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

B. Analysis

In order to establish a CEPA violation, a plaintiff must demonstrate: (1) she had an objectively reasonable belief that her employer's conduct violated a law, rule, regulation, or public policy; (2) she performed a whistleblowing activity as defined in N.J.S.A. 34:19–3(a), (b) or (c); (3) an adverse employment action was taken against her; and (4) a causal connection exists between her whistleblowing activity and the adverse employment action. *See Hernandez*

---

[1] Plaintiff explained that summary judgment in her favor was inappropriate and declined to file such a motion. (Pl.'s letter, June 23, 2015, ECF No. 74.)

*v. Montville Twp. Bd. of Educ.*, 354 N.J. Super. 467, 473 (App. Div. 2002); N.J.S.A. 34:19–3. CEPA claims are assessed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). Thus, the plaintiff bears the burden of establishing a prima facie case of a CEPA violation; if that is satisfied, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment decision. *See Klein v. Univ. of Med. & Dentistry of N.J.*, 377 N.J. Super. 28, 38 (App. Div. 2005). If the defendant satisfies its burden, the plaintiff must then demonstrate that the employer's proffered explanation is pretextual. *Id*. at 39.

Here summary judgment must be granted to Defendants due to Plaintiff's failure to raise a genuine dispute of material fact on the second and fourth elements of a CEPA claim. Regarding the second element of whistleblowing, N.J.S.A. 34:19–3 forbids employers from taking any retaliatory action against an employee because the employee:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or

   [ . . . ]

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
   (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .

N.J.S.A. 34:19–3. While Plaintiff is correct that not all CEPA claims must directly implicate a defined public policy, "CEPA is designed to protect employees who blow the whistle on illegal or unethical activity committed by their employers or co-employees. The purpose of CEPA is to protect employees who report illegal or unethical work-place activities." *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 550 (2000) (internal citations removed). Therefore, "the dispute between

4

employer and employee must be more than a private disagreement." *Morro v. DGMB Casino LLC*, No. 13-CV-5530 JBS/JS, 2015 WL 3991144, at *18 (D.N.J. June 30, 2015); *see also Hester v. Parker*, No. A-1681-09T1, 2011 WL 1404886, at *6 (N.J. Super. Ct. App. Div. Apr. 14, 2011) ("[T]he simple filing of a complaint seeking back wages or a workers' compensation claim cannot be considered a 'whistle-blowing activity.'"); *DiPaolo v. AM Conservation Grp.*, No. A-1323-02T5 (N.J. Super. Ct. App. Div. 2003) (distinguishing a salary dispute from a case about threatened disclosure to a public body of employer's illegal conduct); *Michaelgreaves v. Gap, Inc.*, No. CIV.A. 11-6283 SDW, 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013) (finding that employee did not state a CEPA claim where he only raised issues with inadequate break time).

Here, Plaintiff has failed to demonstrate any of the above whistleblowing activities. Plaintiff's alleged complaints to her supervisors regarding lunchtime pay were bare memos in the following form: "On [date] my lunch was not taken due to the lack of staff relief. Please forward to payroll for compensation." (*See* ECF No. 75-4.) Given the form and content of these memos, no reasonable juror could find that they constitute a disclosure of or an objection to any activity, policy, or practice of Defendants under N.J.S.A. 34:19–3. The memos merely report the dates Plaintiff worked through lunch and seek payment for such time, which Defendants provided, at least from March 2010 until December 2010.[2] The memos do not contain any references to illegality or identify any policy or practice by Defendants of not paying its employees for lunch

---

[2] Plaintiff claims that she was not paid for her lunches from December 31, 2010 to May 2011, but admits that she stopped submitting requests for payment in March 2011. (*See* Pl.'s Statement of Material Facts 5–6, ECF No. 77-1; Campbell Deposition at 72:24–74:9, Mar. 3, 2013, ECF No. 75-8.) Defendants claim they never received any payment requests from Plaintiff from December 31, 2010 forward, but on Plaintiff's January 7, 2011 request there appears to be the following notation from the payroll manager: "Unable to pay for lunch breaks per Mrs. C." (Def.'s Br. 4–5, ECF No. 75-1; Ex. B at 57, ECF No. 75-4.) However, regardless of whether Plaintiff was paid for all lunches worked, given the form and content of her requests for payment, no reasonable juror could construe the requests as a disclosure of or objection to any policy or practice of Defendants under N.J.S.A. 34:19–3.

hours worked.³ Consequently, the memos are more akin to a private dispute between employee and employer than an attempt to publically expose unlawful conduct by the employer. Plaintiff has failed to establish a prima facie CEPA violation because she has not presented evidence sufficient to raise a genuine dispute as to the second required element of whistleblowing conduct. Summary judgment in Defendants' favor is therefore appropriate.

In addition, even if a prima facie violation had been shown, Plaintiff's CEPA claim still fails because she has not demonstrated a genuine dispute as to the causal link between Plaintiff's alleged whistleblowing and her subsequent termination. Specifically, Plaintiff has not produced evidence sufficient for a jury to find that Defendant's proffered explanation for her termination was pretextual. Plaintiff asserts that she was fired in retaliation for seeking payment for her lunchtime work. However, after reviewing the record, no reasonable juror could find that Plaintiff was terminated for requesting lunchtime pay because the credible evidence indicates that Plaintiff was fired for mishandling the E.P. incident on May, 13, 2011.⁴ The audio recording of that incident produced by Defendants makes clear Plaintiff's failure to intervene when the CNA moved E.P.'s legs and yelled at, aggressively argued with, and ultimately swore at E.P.

---

³ The only memo Plaintiff has produced that referenced any violation of law is a July 13, 2010 letter in which Plaintiff requested compensation for her lunchtime work and explicitly stated "I believe that's a basic labor law." (Pl.'s Letter Brief, Ex. 1, ECF No. 69.) However, there is no dispute that Defendants paid Plaintiff in response to that request. (*See* Pl.'s Statement of Facts 4–5 ECF No. 77-1.) Moreover, even if the July 13, 2010 memo is construed as an objection to or disclosure of a practice reasonably believed to be a violation of law under N.J.S.A. 34:19–3, Plaintiff has failed to establish any causal link between the memo and her termination nearly one year later in May 2011. The lack of temporal proximity between the events, along with the fact that Plaintiff does not allege any mistreatment or hostility by Defendants until early 2011, means no causal link can be reasonably inferred. *See, e.g., LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (stating that a gap of three months between the protected activity and retaliatory action "without more, cannot create an inference of causation and defeat summary judgment."); *Smith v. Twp. of E. Greenwich*, 355 F. App'x 740, 749 (3d Cir. 2009) (finding no inference of causation where the plaintiff's whistleblowing activities occurred between July and October of 2004 and the failure to promote him occurred in 2005); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 405 (3d Cir. 2007) (stating that the plaintiff's complaints were "too far-removed from the date of termination for there to be, as a matter of law, a causal connection between the 'whistleblowing' activity and the termination).
⁴ Poor job performance is a legitimate, non-retaliatory reason for terminating an employee. *See, e.g.*, *Bocobo v. Radiology Consultants of South Jersey, P.A.*, 477 F. App'x 890, 900 (3d Cir. 2012); *Milham v. Cortiva Educ., Inc.*, No. 06-04226, 2007 WL 3146669, at *10 (E.D.Pa. Oct. 25, 2007), *aff'd*, 302 F. App'x 70 (3d Cir. 2008).

(Ex. D, ECF No. 75-6). The unprofessional tone and language used by the CNA is unmistakable, and there was nothing to suggest that Plaintiff sought to intervene. While the CNA is arguing with E.P., Plaintiff occasionally interjects but does not defuse or correct the situation. Plaintiff's claim that she did not hear the foul language is questionable because the timing on the recording shows that the incident was tied together.

Furthermore, the close temporal proximity between the May 13, 2011 incident and Plaintiff's suspension only four days later on May 17, 2011 as well as the nature of the subsequent disciplinary proceedings strongly indicate that the reason for Plaintiff's termination was the E.P. incident rather than any requests for lunchtime pay, the last of which was made months earlier in March.[5] *See e.g.*, *Maimone v. City of Atl. City*, 188 N.J. 221, 237–38 (2006) (stating that an inference of causation may be established through close temporal proximity and the circumstances surrounding an employment action); *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *Fronczkiewicz v. Magellan Health Servs., Inc.*, No. 11-7542 JEI, 2012 WL 2357484, at *3 (D.N.J. June 20, 2012). Plaintiff was verbally informed of her suspension on May 17, 2011, and a Notice of Immediate Suspension was prepared on May 18, 2011 mentioning a report of abuse by a patient. (Ex. L, ECF No. 22-23.) On June 10, 2011 a Preliminary Notice of Disciplinary Action was issued to Plaintiff that charged her with failure to stop abuse by a CNA toward a resident and described the E.P. incident. (Ex. A, ECF No. 22-5.) On October 28, 2011 a hearing was conducted before a hearing officer, giving both Defendants and Plaintiff the opportunity to present evidence and arguments relating to the May 13, 2011

---

[5] Plaintiff admits that she stopped submitting memos for lunchtime pay in March 2011. (*See* Campbell Deposition at 72:24–74:9, Mar. 3, 2013, ECF No. 75-8.) Moreover, Plaintiff had made numerous requests for payment from March 2010 to December 2010 and received payment after each request. It seems unlikely that an employer unhappy about receiving such requests would nevertheless honor them for ten months then wait another five months before firing the employee.

incident. (Ex. E, ECF No. 75-7.) At the hearing, Defendant Petrosini reviewed the E.P. incident and subsequent investigation,[6] and the recording was played. (*Id.* at 2–3.) Plaintiff denied wrongdoing and never mentioned any lack of lunch pay or retaliatory conduct at the hearing, but she did state her belief that she had been unfairly targeted. (*Id.* at 2–4.) On November 7, 2011 the Hearing Officer issued a memo that summarized the hearing testimony and concluded with the recommendation that "all of the charges and proposed penalty of removal are sustained." (*Id.* at 4.) Thus, the evidence produced by Defendants in support of a legitimate, non-retaliatory reason for termination is strong. *See, e.g.*, *Bocobo*, 477 F. App'x at 900 (collecting cases and upholding summary judgment for defendants on a CEPA claim "[g]iven the strong evidence supporting Defendants' proffered legitimate, non-retaliatory reason" for terminating the plaintiff").

Plaintiff's arguments for pretext are insufficient to raise a genuine dispute of material fact on causation. Plaintiff points to E.P.'s prior history of making unfounded complaints, disputes the thoroughness of the Defendants' investigation into the incident, and highlights seeming inconsistencies in the deposition testimony of Defendant Petrosini, but all these arguments fail to blunt the persuasive force of the recording and the timing of the disciplinary actions taken by Defendants. Even if E.P.'s accusations were usually unreliable, the contents of the recording support E.P.'s version of events on May 13, 2011. Additionally, even if Defendants failed to conduct a flawlessly thorough investigation, this does not undercut the validity of the recording, nor does it undermine the legitimacy of the hearing. Although Plaintiff claims that she was treated differently from every other nurse against whom E.P. had made complaints, Plaintiff has

---

[6] It appears that not only did the County of Monmouth conduct an investigation of the May 13, 2011 incident, but an investigator from the Department of Health and Senior Services came to the Care Center to review the incident and interview E.P. (Ex. E. at 2, ECF No. 75-7.)

not demonstrated that those other instances involved similar interactions with E.P. captured on a recording. In short, even drawing all reasonable inferences and issues of credibility in favor of Plaintiff as required under the summary judgment standard, no reasonable juror could find, based on the evidence Plaintiff has identified, that Defendants' explanation for Plaintiff's termination was mere pretext. Therefore, summary judgment in favor of Defendants is warranted. *See e.g.*, *Milham v. Cortiva Educ., Inc.*, 302 F. App'x 70, 72 (3d Cir. 2008) (affirming the district court's grant of summary judgment in favor of the defendant on a CEPA claim because the plaintiff had "provide[d] absolutely no evidence . . . to rebut Defendant's claim that he was fired because of his job performance"); *Campbell v. Abercrombie & Fitch, Co.*, No. 03-3159, 2005 WL 1387645 (D.N.J. June 9, 2005) (granting summary judgment on a CEPA claim to the employer because no evidence called into doubt the employer's legitimate, non-retaliatory explanation for the termination).

## CONCLUSION

For the reasons above, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's CEPA claim.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.